CHARLES J. SCHUCK, Judge.
The claimant company, in the summer of the year 1936, was awarded a contract by the state road commission for excavating and grading the project known as the 29th street overhead approaches in Cabell county, West Virginia, and designated as project f. a. 187-e. Work began on or about September 1, 1936. On or about January 27, 1937, a flood of the Ohio river interfered with the progress of the work; caused numerous slides and part of the roadway in question to slip away. Work was resumed after the effects of the flood in question had been removed, and continued to about May 26, 1937, when the project was closed down by order of the state road commission for the purpose of changing certain plans, *4 and remained closed until approximately July 26, 1937, or for a period of about two months.
During this period, the claimant company was obliged to pay its shovel operator, a foreman, and watchman, all of whom were kept on the job during the period in question, although no actual work was done by either of them, except the watchman in carrying out his duties. The shovel operator was paid at the rate of $43.75 per week, or the sum of $350.00 for the period during which there was no work on the project. Likewise the foreman was paid $156.75, and the watchman the sum of $200.00 for the same period. Work was again stopped on the project from September 1 to October 4 by orders of the state road commission, and so far as the evidence reveals, through no fault of the claimant, during which time the claimant company again had an outlay of $509.75 to the employees that the claimant company was obliged to employ and pay, although no work was being done for the period in question. Another “shutdown” took place on or about November 19, 1937, and no work was resumed until some months later, in the year 1938. During all of this time the climant company maintains that it was obliged to keep equipment on the project, as it was expecting from day to day, to be ordered to continue the work and it would be necessary, of course, to have the equipment ready upon such orders being issued by the state road commission. With certain exceptions, as hereinafter pointed out, we feel that the evidence sustains the contention of the claimant that the three different periods during which work was stopped were through no fault of the contractor, and were for periods of time during which weather conditions would be most favorable to the prosecution of the work, and, therefore, most helpful to the claimant in carrying on the project.
The state maintains that the delays were caused through no fault of the state road commission, but, rather, by the floods and the consequent slides, over which the state road commission had no control, and for which it should not be held responsible; in other words, that the interference with the *5 work was caused by an act of God. However, an examination of the record shows that the state road commission realized that if the project, as planned, was carried out, it would likely be subject to future floods and inundations, and, so, concluded to make changes which would avoid such conditions or situations.
Since the evidence further sustains the contention that claimant was not to blame in any way for the said periods during which it was not allowed to carry on the work, it would seem that claimant would be entitled to some compensation for the damages sustained by it through no fault of its own. The state insists that the employees in question who were kept on the project during the several so-called “shutdowns” were not entitled to any compensation, and the claimant, having voluntarily made the said payments for the wages in question, is not entitled to recover the same. Claimant, however, contends that the watchman was absolutely necessary in taking care and watching over the equipment left on the project, and we agree with this proposition. We also feel that the evidence sustains the contention of the claimant company that the shovel operator and foreman, being called upon to do special work, could not easily be replaced, and that they were being maintained on the payroll of the claimant company owing to the fact that it would have been difficult for the company to replace them or to obtain the services of other men when the work resumed. We also agree with this proposition, and under the circumstances, feel that the claimant company is entitled to the return of the outlay paid in wages and salaries for these men, and amounting in the aggregate to $1216.50.
As herein indicated, the claimant company was obliged to keep certain equipment on the project during the time of the cessation of operations, and claims that it is entitled to a reasonable rental value for this equipment so remaining idle during the “shutdowns” in question. The state, on the other hand, maintains that some of the equipment, if not all, could have ~d)een moved to other jobs or projects that the claimant company was then carrying on, and that, therefore, the company *6 is not entitled to any reimbursement for the equipment that remained idle during the said “shutdown” periods. It can fairly well be assumed, as shown by the record (p. 46) that the claimant company was not in a position to move the equipment or a goodly portion of it from the project in question, and therefore have the benefit of its use, since the claimant company was expecting from day to day to return to work on this project, and this contention is not denied by the state. It is therefore our judgment that the claimant company is entitled to a reasonable rental value for certain of its equipment that was kept on the project, and which could not be used, through no fault of the claimant company, but through the changes of plans made by the state road commission, and which brought about the delays in question. However, in view of the fact, as shown by the record (p. 71-72) no rentals were paid by the claimant company during the periods that the work was shut down, the company could not be entitled to the amount usually paid as a rental value, especially so in view of the fact that the evidence tends to show that some of this equipment could have been moved and was moved to other projects and used by the claimant during the periods that the work had ceased on the project in question. The claimant company maintains that it is entitled to approximately $10,000.00 for these rental values, but we are also of the opinion that under all the circumstances, this is excessive, and that the amount of $2500.00, as reflected by the rental value of the idle equipment, would be fair and just to all parties, and we make the finding accordingly.
Under all the evidence of the case there is but one further question which we feel is entitled to our consideration, so far as an award to the claimant company is concerned, and that is the matter of extra work or special work on the ditches that the road commission ordered constructed for the purpose of diverting the water coming from the hillside embankments and keeping the excavations- and project from being further injured or damaged. The project had already been seriously interfered with, as well as damaged by floods of the Ohio river, and the engineers of the road commission were rightfully tak *7 ing every means to protect the project from further invasion by water from the hillsides and seeking to divert the same so that the project, when completed, would be permanent in its nature and not require work from time to time in making repairs by reason of the collection of the water from the hillside adjacent to the project.- As herein indicated, for this purpose, additional ditches were constructed and we feel that the construction of these ditches could not have been and were not contemplated in any way by the contract in question, which contention, of course, is supported by the location of the ditches and the fact that they were not contemplated by the parties at the time that the contract was entered into. The work on these ditches was extremely difficult and unusual, as compared with the other work on the project. It seems that the contracting company was required to do more work to complete the ditches than under ordinary circumstances, and had trouble in getting equipment to a place where the ditches could be excavated to some advantage and profit. The claimant maintains that it was put to both extra trouble and extra expense (record p. 77) in constructing the said ditches. The claimant maintains that it is entitled to an extra charge for the construction of said ditches at the rate of twenty cents a yard extra, and that 17,300 cubic yards were involved in the additional excavations, and that the claimant company should be paid an additional $3463.41 for the said additional work. We feel that this is a just claim and should be allowed.
Under all the evidence in the case, as submitted, we feel that the claimant contractor is not entitled to any additional compensation for separating the rock from the earth in one of the items filed, but we are of the opinion that this was part of the contract contemplated by the parties, and that the evidence further tends to show that it was usual and necessary in carrying out the work in question, and consequently, must have been contemplated by the claimant when entering into the contract in question.
Under all the circumstances, then, we are of the opinion that the claimant is entitled to an award of $7179.91, made up *8 of the three several-items, to wit: $1216.50 for payments made to employees required on the project during the “shutdown,” the sum of $2500.00, as a fair rental value for the equipment in question, and the further sum of $3463.41 for extra compensation in the construction of the special ditches, making a total of seven thousand one hundred seventy-nine dollars and ninety-one cents ($7179.91), and an award is made accordingly.